UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MOHAMMAD Z. MOHAMMAD AMAN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner for the Social Security Administration,<br><br>　　　　　　Respondent. | Case No. 1:10-cv-00426-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Mohammed Z. Mohammad Aman's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed August 23, 2010. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Supplemental Security Income on April 2, 2007, alleging disability due to right hip arthrodesis, degenerative joint disease of the lumbar spine, degenerative joint disease of the hips and knees bilaterally, osteopenia of the lumbar spine, and meniscal tears in the right knee. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

**Memorandum Decision and Order - 1**

Administrative Law Judge (ALJ) Michael A. Kilroy held a hearing on May 15, 2009, taking testimony from Petitioner and vocational expert Anne Aastum. (AR 22-64.) An interpreter for Petitioner participated by telephone. (AR 24.) Petitioner submitted a written closing statement, including an objection to the adequacy of the translation, on May 18, 2009. (AR 179-81.) ALJ Kilroy issued a decision finding Petitioner not disabled on August 31, 2009. (AR 10-21.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review on June 24, 2010, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 52 years old. He has a college education with a degree in chemical engineering, and his past relevant work includes manager, store; cashier-checker; and sales representative, door to door.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since April 2, 2007, the application date.

At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's status post right hip arthrodesis, degenerative joint disease lumbar spine, bilateral hips and knees, osteopenia lumbar spine, and right knee meniscal tear are "severe" within the meaning of the Regulations.

**Memorandum Decision and Order - 2**

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments or combination of impairments did not meet or equal the criteria for the listed impairments.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform his past relevant work as a cashier-checker.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Although finding at step four that Petitioner was not disabled, the ALJ proceeded to step five to provide an alternative finding. At step five, he found that Petitioner could perform occupations such as document preparer microfilming and table worker.

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work

experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

**Memorandum Decision and Order - 4**

is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred by failing to provide proper support for his finding that Petitioner can ambulate effectively; that he improperly denied Petitioner's claim by finding that he could return to his past work as a cashier-checker; that he failed to cite a light level job that was within petitioner's assessed residual capacity; and that the translation services provided to Petitioner, an Afghani refugee who speaks Farsi, during his hearing were not sufficient to provide Petitioner with due process. The Court will address each of these arguments in turn.

**A.     Failure to Provide Proper Support in his finding that Petitioner Can Ambulate Effectively.**

Petitioner notes that the key question in finding whether he meets listing 1.02 is whether he has an inability to "ambulate effectively." As relevant here, the listing is as follows:

> **1.02** *Major dysfunction of a joint(s) (due to any cause)*:
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in *inability to ambulate effectively*, as defined in 1.00B2b . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02 (emphasis added).

**Memorandum Decision and Order - 5**

> Inability to ambulate effectively, in turn, is defined in §1.00B2b as follows:
>
>> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>>
>> (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b.

Petitioner contends that his testimony demonstrated that he cannot ambulate effectively because he has significant difficulties climbing multiple steps (AR 33), he must put one foot on the step and push the other foot on the step while holding onto the rail (AR 46), and that he is unable to walk at a "normal rate with the normal people" (AR 46). He further contends that there were many references in the record to his limp with the descriptions ranging from "significant" to "mild." (AR.188, 250, 262.)

The Court notes that Petitioner focused on the first portion of the definition of inability to ambulate effectively. While it does mean an extreme limitation on the ability to walk that interferes very seriously with an individual's ability to initiate, sustain, or complete activities, the

**Memorandum Decision and Order - 6**

second portion of the definition is applicable as well.  That includes having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities.  Likewise, Petitioner focuses on only one of the several examples in subparagraph (2) – the inability to walk at a reasonable pace.  The Court recognizes that the ability to walk independently in one's home without the use of an assistance device does not, standing alone, constitute effective ambulation.  However, there is substantial evidence in the record, including the reports of his medical providers and therapists, to support the ALJ's conclusion that Petitioner does not meet the listing because he can ambulate effectively both inside and outside the home.

It is apparent that Petitioner walks with a limp and otherwise has some difficulty walking.  However, his testimony that he cannot walk a "normal" rate with "normal" people does not dictate a finding that he cannot walk at a "reasonable rate."  Furthermore, the record reflects that he can perform many of the tasks that people who cannot ambulate effectively cannot perform.  He does not require the use of an assistive device.  (AR 188, 229, 245, 250, 253, 254, and 262.)  He is able to use public transportation, drive a car, shop in stores, take care of his children, and perform household chores.  (AR 42 (drive), 43 (drive), 131 (shop twice a week), and 191 (chores, stairs, drive).)   He is able to climb stairs independently (AR 191, 253) albeit at with a single handrail (AR 33, 46, 291, 292).

The ALJ's decision is supported by substantial evidence and was not the product of legal error on the issue of whether Petitioner meets a listing.

## B. Improper Denial of Petitioner's Claim by Finding that Petitioner Could Return to His Past Work as a Cashier-Checker

Petitioner contends that because his past work was part-time and highly accommodated, the ALJ's finding that he could return to his work as a cashier-checker was erroneous. His past work in his small shop in Tajikistan was limited to four to five hours per day during which he would take a 45-minute break to rest at a nearby home. (AR 47, 49.) In later years of his shop ownership, his son would take over for him after school until closing time, and he would open his shop later and close it earlier if an employee was unable to work. (AR 50-51.) Furthermore, his contends that his condition had progressively worsened over a five-year period. (AR 244.)

The Respondent contends that the ALJ properly relied on the Vocational Expert's opinion that based on his Residual Functional Capacity, Petitioner could perform his past relevant work as he actually performed it.

"A job qualifies as past relevant work only if it involved substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1560, 404.1565, 416.960 and 416.965). Part-time work may be substantial work. *Katz v. Secretary of Health & Human Services*, 972 F.2d 290, 292 (9th Cir. 1992) (citing 20 C.F.R. § 404.1572(a)). Therefore, it follows that part-time work may qualify as past relevant work. The claimant has the burden of showing that he can no longer perform past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

The ALJ must examine the claimant's residual functional capacity and physical and mental demands on his past relevant work when determining whether the claimant can perform that work as actually performed or as generally performed in the national economy. *Id*. To determine the work as actually performed, the ALJ may look to the claimant's own testimony

**Memorandum Decision and Order - 8**

and a properly completed vocational report. *Id.* at 1083-84. In doing so, the ALJ must determine credibility and resolve conflicts and ambiguity. *Id.*

Here, the ALJ found that Petitioner has the residual functional capacity to perform a limited range of light work. More specifically, he found:

> The claimant requires the opportunity to alternate between sitting, walking and standing and could do so for 8 hours. He could walk for up to but no more than 1/2 mile at a time or 1/2 hour at a time; the most he could stand at one time would be somewhere between 10 to 30 minutes; and the most he could sit at one time would be somewhere between 1 to 2 hours. He could occasionally lift 20 pounds and frequently lift 10 pounds. He could not crawl or climb ladders or scaffolding. He could do stooping, crouching and kneeling only seldom. He could do stair climbing by only using one step to the stair followed by the second and then only a few stairs at a time. He could balance at least occasionally. Further, he has limitations in social interaction and in concentration, persistence or pace but only based on English language difficulties as follows: He is able to deal with the public on a brief, superficial basis or on an occasional basis as long as the people he talks to are very small numbers, somewhere between 1 to 3 or 4 people. Regarding concentration, persistence or pace, he is not limited except if the job requires English beyond brief conversations or brief bits of reading, then the job would be excluded. This means, for instance, that if he has to learn something new during the work period, it would need to be learned either, through visual demonstration or the opportunity to read the requirements before he would have the chance to do the work and with the opportunity to ask questions.

AR 13-14.

An ALJ's determination of a claimant's residual functional capacity will be affirmed if he applied the proper legal standard and his decision is supported by

substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ considered Petitioner's testimony and medical evidence and found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms and that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are fairly credible except to the extent they are inconsistent with the above residual functional capacity assessment." (AR 16.)

The ALJ recognized that claimant is not pain free but determined that his statements were "not indicative of disabling pain," that he had not mentioned uncontrolled pain to his physicians, and that he had not had significant adverse side effects from medication prescribed to alleviate the pain. (AR 16.) He noted that Petitioner's treatment had been conservative in nature; that Dr. Marsh indicated that he was doing "fairly well" despite not taking "a lot" of his medication; that his medications had been fairly effective when taken; and that none of his treating physicians, including specialists, had determined that he was disabled. (AR 17.)

The ALJ also considered the KEY Functional Capacity Assessment noting that Petitioner had "provided less than full effort" and that the "sub-maximal effort represented the level the client perceives as his capability." (AR 17.) The results of the assessment were that Petitioner had the ability to function at a light work level. (AR 17.)

Finally, the ALJ considered the residual functional capacity assessment for a range of light work from the State agency reviewing medical consultants at the initial and reconsideration level. (AR 17.) The ALJ noted the medical reasons for the opinion but

**Memorandum Decision and Order - 10**

also imposed additional limitations such as:

> . . . the opportunity to alternate sitting, standing and walking positions and a greater degree of postural limitations due to additional evidence and testimony received at the hearing level not before the State agency and due to further consideration of the combined effect of the claimant's impairments and the claimant's subjective complaints. The undersigned also imposed limitations in social interaction and concentration, persistence or pace in the work setting due to English language difficulties.

AR 17-18.

After considering all of the above, the ALJ concluded:

> While the claimant has chronic pain and functional limitations as a result of his impairments, the evidence and testimony did not support a conclusion that he suffers from disabling pain that would completely limit him from all work or restrict him to only part time work. Further, the above residual functional capacity accommodates many of the claimant's subjective complaints concerning his pain and physical capabilities.

AR 18.

The Court finds that the ALJ's determination regarding Petitioner's residual functional capacity is well supported by substantial evidence with due consideration for his subjective complaints.

The ALJ then relied on the vocational expert's opinion that Petitioner could perform his past relevant work as a cashier-checker. The ALJ may rely on an vocational expert's answer provided he poses a hypothetical that "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217-18.

**Memorandum Decision and Order - 11**

The vocational expert testified that Petitioner performed the job of store manager and cashier-checker at the sedentary level. (AR 55.) The ALJ recited his residual functional capacity assessment, including limitations cited above, in the hypothetical directed to the vocational expert. She found that an individual with the restrictions in the hypothetical would be able to perform the job of cashier/checker although the number of jobs in the national economy would be reduced given the English language limitations in the hypothetical. (AR 56.) Based on the vocational expert's opinion, the ALJ found that Petitioner's impairments do not prevent him from performing his past relevant work as cashier-checker as he actually performed it which was at a sedentary level. (AR 18.)

The Court finds that the ALJ properly relied on the vocational expert's answer to the hypothetical that he provided containing all of the limitations that the he found credible and supported by substantial evidence in the record. Furthermore, part time work can qualify as past relevant work, and the limitations in the residual functional capacity approximated the "highly accommodated" conditions of his past relevant work. Accordingly, the Court affirms at step 4 the ALJ's determination that Petitioner is not disabled because he could perform his past relevant work as a cashier-checker at the sedentary level.

C.  **Failure to Cite a Light Level Job that was Within Petitioner's Assessed Residual Functional Capacity.**

The ALJ found that three *sedentary* jobs – document preparer, microfiliming, and table

worker – existed for Petitioner. Petitioner contends that the ALJ erred by not providing specific *light level* jobs within Petitioner's residual functional capacity for light work rather than *sedentary* work. The ALJ made this determination during his alternative findings at step five. Because the Court has affirmed the ALJ's finding of not disabled at step four, the Court need not address this argument.

**D.    Translation Services Provided to Petitioner During the Hearing Were Not Sufficient to Provide Petitioner with Due Process.**

1.    **Factual Background**

On the day of the hearing, the Farsi interpreter who was to have appeared at the hearing and translated was not available. Accordingly, the AJL arranged for an interpreter to translate via telephone. After the hearing, Petitioner and counsel complained that the translation was inadequate.  (AR 179-81; 182-83.)  The ALJ overruled the objection "given the fact that the claimant and translator both spoke Farsi and there was no substantiation the claimant's responses were materially mischaracterized."  (AR 10.)

More specifically, counsel's closing statement to the ALJ complained that it was "extremely frustrating" because the interpreter was not present with Petitioner.  He indicated that there was "clear confusion," that Petitioner attempted to answer questions not directed to him, that the interpreter "held conversations" with Petitioner rather than translating, and that he was not able to adequately communicate with his client.[1]  (AR 179-81.)  He asked for a supplemental hearing with proper translation services if the ALJ were inclined to find against him.

Petitioner himself also submitted a letter through counsel two days later.  In his

---

[1] Counsel regrets not asking for a postponement until adequate interpretation was available. He had been so confident in his case that he did not expect the hearing to be overly complicated.

**Memorandum Decision and Order - 13**

statement, Petitioner stated that he was confused throughout the hearing, he had a very difficult time hearing the translator over the phone, he could not understand him very well when he did hear him, that the translator spoke with an accent that was not familiar to him, that he was stopped during the hearing to allow the interpreter to translate, but he was not allowed to resume his response most of the time, and that the translation contained mistakes about his education and work experience. (AR 182-83.)

   2.   **Applicable Law**

The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") at I-2-6-10 addresses the use of foreign language interpreters:

> If a claimant has difficulty understanding or communicating in English, the ALJ will ensure that an interpreter, fluent in both English and a language in which the claimant is proficient, is present throughout the hearing.

http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-6-10.html

HALLEX is an "internal guidance tool" for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law. *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000). "However, traditional notions of due process would suggest that without an interpreter, a claimant unable to communicate in English would hardly receive 'a full hearing . . . in accordance with the beneficient purposes of the [Social Security] Act.'" *Martinez v. Astrue*, 2009 WL 840661 at *2 (D.Conn. 2009) (citing *Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir. 1982)).

To borrow from the context of immigration hearings, to succeed on a due process claim of inadequate translation, a petitioner must show that a better translation would have affected the outcome of the hearing. *Acewicz v. U.S. I.N.S.*, 984 F.2d 1056, 1063 (9th Cir.1993) (citing

*Tejeda-Mata v. INS*, 626 F.2d 721, 727 (9th Cir. 1980). Evidence of incompetent translation claims includes direct evidence of incorrectly translated words, unresponsive answers by the witness, and a witness's apparent difficulty understanding what is said to him. *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2003) (citations omitted) (finding both incompetent translation where transcript showed that alien's responses evidenced a lack of understanding of the questions and resulting prejudice deprived alien of due process).

To prevail on an incompetent translation claim, a party must show prejudice. "[T]he standard is whether 'a better translation would have made a difference in the outcome of the hearing.'" *Id*. at 780 (citing *Acewicz*, 984 F.2d at 1063). "The standard is onerous, but not insurmountable." *Id*. Notably, however, the Ninth Circuit has denied an incompetent translation claim in a variety of circumstances: where the translation was at times nonsensical and where clarification or repetition was at times required where in each instance the misunderstanding was rectified to the apparent satisfaction of the parties; where there were isolated passages of garbeled testimony; where the interpreter spoke too softly for the microphone to pick up on several occasions and had difficulty with certain questions and answers but the IJ intervened each time to ensure that the words were translated, heard, and understood; and where the translator spoke broken English, but there was no evidence of a faulty translation. *Id.* n.5 (quotations and citations omitted).

### 3. Discussion

Petitioner notes that from the beginning of the hearing, there were technical difficulties with the telephone connection with the interpreter that continued throughout the hearing. Indeed, a review of the transcript confirms that there were either incidents

**Memorandum Decision and Order - 15**

with the telephone connection itself resulting in "feedback," difficulties with the interpreter and/or the ALJ not hearing what was said, and several times when the interpreter was not translating word for word but rather speaking in the third person all of which are detailed more specifically in Petitioner's and counsel's statements and in Petitioner's brief.  The Court found the transcript difficult to follow at times and the whole process at the hearing less than ideal.  While the transcript is not a "word for word" translation of the questions and answers, the Court was able to follow the general tenor of the questions and answers and found no glaring inconsistencies between the two.  Furthermore, an examination of the record reveals that Petitioner was not prejudiced by the questionable translation.

As the Respondent points out, the instances cited by Petitioner regarding the translation do not support a finding that a better translation would have made a difference, that he does not assert that the answers were not his answers, that the ALJ found Petitioner less than credible, and that the ALJ relied also on the medical and other evidence to support his finding that Petitioner was ambulatory and his determination of Petitioner's residual functional capacity.

Petitioner has demonstrated some instances of the interpreter speaking conversationally rather than translating word for word, Petitioner's unresponsive answers to questions, and his difficulty understanding the interpreter that would be evidence of incompetent translation.  However, the ALJ intervened in instances where there was difficulty hearing or understanding and apparently resolved the situations to Petitioner's

**Memorandum Decision and Order - 16**

and counsel's satisfaction given their lack of objection during the hearing. Furthermore, the ALJ noted that Petitioner occasionally started to answer a question in English without waiting for the interpreter which was consistent with reports that he spoke in English to his doctors and others, an indication that he was not totally dependent on the interpreter. (AR 19.)

Despite issues with the translation services at Petitioner's hearing, the Court finds that Petitioner was not prejudiced by that translation. Accordingly, the Court finds no due process violation and affirms the ALJ's decision.

## CONCLUSION

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be *affirmed*.

# ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be *AFFIRMED* and that the petition for review be *DISMISSED*.

DATED: September 28, 2011

Honorable Mikel H. Williams
United States Magistrate Judge